May it please the court. I'm Robert Crais and I represent Art Navarro, the plaintiff and appellant. This is a employment suit that was filed in Tulare County Superior Court and was based on California law. And it was filed, the employer was Eagle Mountain Casino, operated by the Thule River Tribal Council. The tribe removes this case to federal court and moved to dismiss for lack of sovereign, because of sovereign immunity. And the district court agreed with it and we brought this appeal. The appeal really has two bases. One is looking at the handbook and the language that's contained in the handbook. And we say that that's an adequate basis to find a waiver of sovereign immunity. And the second one is we raise the Foreign Sovereign Immunity Act. Counsel, could you address the subject matter jurisdiction issue that the court asked the parties to? Okay. Yes, I will. Now, as the court asked, if you look at the complaint, the complaint and you read it, there is nothing in it that would suggest that there's any type of federal jurisdiction. So it's very difficult for me to talk at length about something that's not there. It's simply not there. There is some factual allegations in the complaint. It is a casino, so there are those type of factual allegations. But as far as the criteria, the issues that are raised in the complaint, they are all California law. So would you agree, then, that there was no subject matter jurisdiction in the district court? I would agree with that. In fact, we raised it in a – poorly, perhaps. In the opposition, in the footnote on the first page, I said if the court finds that there's a waiver, basically should send it back to court, and I think – But that's not the point, because the waiver doesn't support jurisdiction. So I – No, I understand that. But you didn't understand that at the time, apparently. I didn't understand that. And neither did the district court and neither did your opposing counsel, I gather. I understand now what the Court's saying is you don't even have a right to decide whether or not there was a waiver of sovereign immunity because there's no Federal jurisdiction in the first place, and you should send it all back to Tulare County Superior Court. Exactly. And I would agree with that. All right. Let me wish to hear from your opposing counsel on that point before we go forward. Thank you. Good morning, Your Honor. Robert Turello for the Responding Parties. If you agree, that would make it really easy for us. To make it really easy, there is a Federal question presented in the complaint, which is the immunity under the Foreign Sovereign Immunities Act. As the Supreme Court has – Isn't that a defense, though? That's a defense, too. But that is one of the defenses that Congress has specifically reserved to the Federal courts. If you look at 28 – To confer subject matter – To the district court. To confer subject matter jurisdiction? Correct. That's correct. 28 U.S.C. 1330A provides the exclusive jurisdiction of the district courts to decide questions of immunity under the Foreign Sovereign Immunities Act. And 28 U.S.C. 1441D expressly authorizes removal of cases in which the Foreign Sovereign Immunities Act defenses – So that was the proof. That's why that defense was alleged? I don't know why that was alleged, but Mr. Craze did allege it. It is in the complaint, and it is something which – It was alleged in your removal papers. It's very strange. I did not see it as foreign sovereign immunities because it did not say foreign court in the complaint. But if you read the first sentence of paragraph 7 of the complaint, which I believe is in the record at page 5, Mr. Craze sets forth the essential allegations that would apply under section 1805 – or 1605. I believe it's excerpt of record on page 6, and it is paragraph 7 of the complaint. First sentence, the actions complained of herein involve commercial activity that occurred both inside and outside of the Tulare River Indian Reservation and had direct effect in the United States and in California outside of the Tule River Indian Reservation. If you go to the Foreign Sovereign Immunities Act, section 1605, one of the provisions is that there is no immunity from jurisdiction for a commercial activity of the foreign sovereign. Foreign is the operative word, though. That's – That is correct. And that gets to the merits of whether or not the defense applies. If we were to decide that there is nothing with regard to the Foreign Sovereign Immunity Act doesn't apply here, which it almost surely doesn't, then what do we do with the jurisdictional question? Well, in order for this Court to decide that the Foreign Sovereign Immunities Act doesn't apply, it has to have jurisdiction to determine that question. I understand that. And that's what Congress has given this Court in section – I understand that. And this is interesting, and you may be right. Now, why did nobody ever mention any of this anywhere in this litigation? There was no question of jurisdiction raised in the district court under the Foreign Sovereign Immunities Act. There was no motion for remand. And the brief started right off on Foreign Sovereign Immunities Act. In fact, if you look at the plaintiff's reply memorandum in the case below, he starts off and he says, in paragraph 7 of the complaint, there are four grounds set forth for immunity. Number 4, he specifically lists and mentions the Foreign Sovereign Immunities Act. Where is that, counsel, in the record? That would be in the excerpt of record at, I believe, page 22 to 23. Okay. So Mr. Craze has injected into this complaint the Foreign Sovereign Immunities Act. Well, it says, defendant's motion to dismiss concerns solely the question of defendant's claim of sovereign immunity, not foreign. Oh, yeah. That's very correct. Right. Then you go on, third sentence. However, paragraph 7 of the complaint clearly alleges four different bases. These are, number 4. Right. That the acts of the tribe were commercial and had an effect outside of its territory such that there is jurisdiction under the Foreign Sovereign Immunity Act. And he still argues in his brief as well.  Now, very interesting. So the question is, you know, does the Foreign Sovereign Immunities Act apply? And Congress has said that it's the federal court that has the jurisdiction to make that call. Very interesting and very clever. Next thing. So suppose we say, all right, well, that's easy. Plainly not. Then what? Do we go on to decide the sovereign immunity question, the real sovereign immunity question, or do we just send the whole thing back to the district court and say there's no jurisdiction here because there's no foreign sovereign immunity in this act, send the thing back to state court? Well, I would say once the case is properly removed to the district court. There's supplemental jurisdiction. Supplemental jurisdiction. But the district court didn't look at it that way. Nobody's made any decision about whether to look at it that way. That's correct, because it was not addressed as being federal sovereign immunity under one act and not under the other. Because the court may decide not to exercise supplemental jurisdiction of what is now strictly a State cause of action. Right? If the court had made that decision, which it could have done under the supplemental jurisdiction section, it could have remanded. But it didn't. And it did have the right to make the decision as to the remaining claims of immunity under the supplemental jurisdiction statute. It had looked at it that way, but it didn't. It seems to be. Yes. Am I right that everybody was thinking that the Indian domestic sovereign immunity issue was supporting the jurisdiction, and that's wrong? I would concede that under the domestic jurisdiction, there is no jurisdiction in this court. And when I removed it, I did not see the foreign sovereign immunity there. But you didn't mention it. Nobody could have been thinking about it at the time. Certainly the district court wasn't. Correct. But then as soon as the complaint and the pleadings came in, it was clearly there. So there wasn't. It was there, but nobody ever discussed the question of whether or not. We didn't see the Foreign Sovereign Immunities Act question on the complaint because it didn't say foreign sovereign. I understand. I understand. But the question was presented. Can we be a little bit creative here? Why don't we go back to your opposing counsel and go on with the argument? Because that was useful and interesting. Yes, Your Honor. I'd like to address the fact that the tribe is saying that they are not a foreign sovereign immunity and that they're not a foreign sovereign and that the foreign  And I think it's right, as I understand it, that there is removal jurisdiction over that issue, that you did set up the complaint to raise it and that you are raising it. Well, except it was not removed for that reason. No, it wasn't. It did not remove it for that reason. It ends up in Federal court and they bring a motion to dismiss. Now, the complaint does not state anywhere in it foreign sovereign immunity under the act or allege the citation to that act. But you then raised it as a defense in state court. I raised it as a defense. In district court, did you? Yes. Yeah. So it's raised as a defense in district court. So now this court, it's correct. I can't, you know, that's the process we were there. I also raised, I think, at that point, the Indian Civil Rights Act. And, of course, we've dropped that as well. So I think we've raised You haven't dropped this. It's in your briefs in this Court. No, I realize. I haven't dropped the Foreign Sovereign Immunity Act. So if the Court says that act applies, then we're properly in Federal court. Well, we don't necessarily say the act applies, but we have to determine whether the act applies, which is the jurisdictional hook that keeps the case in Federal court. But that requires that the defendant, the Indian tribe, has to say we are a foreign state. No, it doesn't have to say that. It has to say that the issue of whether we are a foreign state is properly before the court. And because it's properly before the court, then the other issues are also at least potentially properly before the court. That leads to a nice sort of procedural question. As supplemental. I don't have anything more to add. Okay. Well, the issue becomes, to me, whether or not there has to be a good faith pleading. I mean, if the party does not think that the statute applies, but nevertheless just pleads it in order to get a jurisdictional hook, is that a valid basis for subject matter jurisdiction to lie? Well, of course, I pled this and filed it in Tulare County Superior Court. So I didn't. I wasn't thinking about being, staying in Federal court or trying to stay out of, you know, Federal court. So it wasn't being pled for the basis of trying to get into Federal court. It's an interesting procedural. Do you want to, well, why don't you go on to the merits of the issues of, and maybe start with the Foreign Sovereign Immunities issue, just because if that one isn't correct, then we have the supplemental jurisdiction question. Well, the Foreign Sovereign Immunity Act, I could say basically the key case in this matter that people seem to look at is the Kiowa case. But the Kiowa case does not really hold that the Foreign Sovereign Immunity Act applies or doesn't apply. In the dissent, the Foreign Sovereign Immunity Act is raised and discussed. There, so this Court doesn't have, it's basically looking at this Act and the question comes down to whether or not an Indian tribe is a foreign state within the meaning of that Act. Aren't there a myriad of cases saying that it's a domestic nation? Yes. I mean, doesn't the Court say that all the time? It does, but there are no Supreme Court cases. And there are Supreme Court cases saying it's a domestic nation. There are no Supreme Court cases directly on the Foreign Sovereign Immunities question, but there are plenty of Supreme Court cases characterizing the Indian nations as domestic, not foreign nations. Well, that's true. And I would say that when they do that, they are not necessarily deciding whether that Act applies or not in that context. Well, but we, in order to be under that Act, you have to be foreign. So that's the hook, is whether or not it's foreign or domestic. And if it's domestic, doesn't that end the inquiry? I would agree with that. If you make the distinction saying that it's a domestic and not a foreign state, then you're right. And we've been told that a hundred times. So let's assume for the time being that there is no foreign sovereign immunity jurisdiction. What happens next? Okay. If we look at whether or not the Court is going to decide the issue of whether or not the waiver is clear, now we have to look at sovereign immunity. Waiver of domestic sovereign immunity, if you will? Yes. Now, if we look at whether or not the Indian tribe has waived its sovereign immunity by the language stated in the employee handbook. Now, the employee handbook forms evidence of or part of the whole employment relationship contract. The case law basically says a waiver has to be clear. The case law doesn't require that the waiver be written or oral or in a contract signed by the parties. It just says clear. And so being in the handbook is a good enough place. The statement that we talk about. Does the handbook disclaim any contractual obligation? Well, the handbook does. But under the Goose case and I think I also mentioned the older Ninth Circuit Kern case, both of those cases talk about the handbook, even with those disclaimers, as being evidence of what the agreement is. I don't see why this is a waiver. That's what I'm having trouble with. It says in lieu of any arbitration, employee. This is the language you're relying on, as I understand it. In lieu of any arbitration, employee agrees to exhaust all appeals as provided herein prior to initiating any litigation or other legal action. But where is that? That doesn't say the other any litigation or other legal action will be valid. It just says that before you try and go to court, you have to exhaust. It doesn't say what happens when you get to court. Well, I think under the C&L case, the Supreme Court case, C&L, it talks about that And if you're going to say the employee has the right to litigate, you must have a right to litigate somewhere. But isn't that the opposite? There they specifically said that there was going to be arbitration. They agreed to arbitration. Here they didn't agree to arbitration. It's the opposite. They agreed not to arbitrate. Well, I don't see what it's – if you agree to arbitrate, you could agree to mediate, arbitrate, stand in the sun for an hour or do a whole bunch of things before you could file suit. I don't know how many hoops that you want to set up that needs to be stated in the waiver. If this document said the Indian tribe waived sovereign immunity, period, just said those phrase and didn't say how, where, what law, what venue, we wouldn't be here because – It doesn't say that, does it? Pardon me? Does it say how, when, where? No, it doesn't. Right. So how do we know that the litigation they're talking about isn't litigation in tribal court? Well, because you have to file litigation at the place where the venue is, which is in Tulare County. That's where the Eagle Mountain Casino is. And you apply the law of California. That's what's – How does it say that? Well, because – How does it say that? It doesn't say that anywhere. But if we don't say that, my example to the Court is this. If the handbook said the employer waived sovereign immunity for all purposes in the employment relationship, the Court would not worry about which court or which – No, because it would say all purposes. You set up the hypothetical that way. Okay. But isn't there a case law that says that if it just says sovereign immunity, that doesn't necessarily mean outside the tribal court or it can mean just the tribal court? No. If it – the cases, like, for example, DiMontine, which is cited by the defendants, talks – has a contract which says you could do things, and then it says, but the tribe is not waiving its sovereign immunity. There's a specific language in there. Here we have a situation where we have a sentence that did not need to be in the handbook. It's not a sue-or-be-sued type clause. It's a statement that was put in the handbook by the Indian tribe that says after you exhaust remedies, you can file a lawsuit. And if you can't file a lawsuit in California courts, then I can't file a lawsuit And I guess there's no place you could ever file a lawsuit, and the sentence means nothing. And why would we have a sentence that means nothing put in there by an employer? But it didn't waive any defenses it might have to the suit, though. You can file it, but it didn't waive the defense. In lieu of – I mean, in light of the fact that a waiver has to be – I mean, it has to be clear, at least. I'm not sure that it gets us there. I think if we ask a typical person on the street, if you can file suit, does it throw you out, everybody would say the right to litigate or the right to file legal process is – includes the right to not have the – I guess my problem is one step back. I don't even read that sentence as saying you have a right to file – right to file suit. It says that you have to exhaust before you file suit, but it doesn't say what happens if you – about filing suit. Well, it says prior to initiating any litigation or other legal action. Well, I guess – I guess the whole thing means nothing if we say there's not a waiver. That sentence means nothing. Well, tell me – I guess what I want to know is this. What do you do with the possibility that – or the probability, perhaps, that the suit they're talking about is a suit in tribal court? Why is that not a perfectly viable interpretation of this language? Well, except there is no tribal court available here or otherwise. Well, apparently there is, because you use – I mean, I understand there's a dispute about whether the one that was used was a real tribal court, but there was a litigation in a tribal court in this very case. Well, this was not in this case. In a predecessor case. I understand. In a dispute. And that was an intertribal court. And there's not a tribal court of the Thule River tribe, but an interall, I think, whether it includes all of California or whatever area. But there is a court system that was set up, whether it still exists, I don't know, to provide a forum, and that forum was completely rejected by the defendants. I understand that. But you went to it, I gather. Well. And your client went to it. He went to it. Well, and that's where it was sent, and he won in that court. Right. And he did. And that win has sort of stuck in the sense that he has not – although he was fired, his license wasn't removed. That's correct. Yeah. So it didn't really reject it. I mean, it rejected the consequences of not getting fired, but it didn't – no one's maintained that his license should be withdrawn. Is that right? That's correct. And he's able to keep his license and work elsewhere. That's true. And I think that – So he had a remedy in a court, and it worked, and this sentence makes perfect sense in that context. So what's the problem? Well, except that now we have a second one, a second action. After that first action comes to an end, we have a second action. And in the second action, the defendant says, we don't want to have – we don't want to be in court with you in any jurisdiction. They're not offering to go to an intertribal court. They're not saying we have a tribal court. They're just saying we don't want to be in any court. We don't like that sentence. Yeah. We haven't waived our immunity as to this type of action. Well, if you tell somebody they could litigate, I would think that you're – Wait a minute. Because I don't understand this. Did you file this action in the intertribal court or anywhere else other than California? No. It was filed in Tulare County. Why are you talking about any other action other than the one that was filed? Because factually, that's where the comment about the intertribal court comes from. In the facts that are alleged in the complaint, it stated that there was this predecessor set of events. Right. Now, it's just simply part of the events that happened prior to – How do you know that if this case had been filed in the intertribal court that the defendant would have objected to the court proceeding? Because they're – Did they do it last time? Pardon me? Did they object last time? They are the ones who brought up the intertribal court somewhere in the middle of the – No, no. I'm asking in the earlier action, who brought that case? I think it was – The license action. It went – well, the gaming commission, I believe, challenged his license and suspended it, and then he filed an appeal. Did anybody claim sovereign immunity in that case, or did it not come up because it was running in the other direction? It didn't come up, and it would never – I don't think it was even questioned. Sovereign immunity wasn't an issue. It was then sent by agreement to this intertribal court, and then when it came back, they said, well, we don't like the decision, so we may have no harm. Where did it start from before it went to the intertribal court? In the in-house type of – It was exhausted, as the contract suggests, and then it went to a tribal court, and nobody ever raised a tribal immunity problem – a sovereign immunity problem. That's essentially correct. So that would totally explain the language in the statute, in any contract. Well, but there is no intertribal court for us to go to to file this suit. Can we go to the same one? Why is that? First, it was suggested by agreement. It basically was a situation where if you had a lawsuit and the parties in the middle of the lawsuit say, let's go to binding arbitration. So you go off to binding arbitration. Or before litigation starts, you're in the middle of arguing about it and say, rather than file a lawsuit, let's go to binding arbitration. Let's pick out this arbitrator. Let's pick out Jams. Let's pick out American arbitration, whoever you want to pick out. This intertribal court came out of nowhere. It's not in any of the papers. It was used for this particular dispute. The tribe then repudiated it. What do you mean by that? Well, they said they said, we don't think we decide that the intertribal court did not have jurisdiction, but we like we don't agree with their reasoning, and but we agree with their result, so we're going to follow their result. Okay. So why? So are you saying then that for the termination action, if the tribe did not agree to the intertribal court hearing the case, there was no avenue for that case to be heard? That's correct. And we did allege in the complaint we exhausted all the remedies. She asked the tribe to go back to the intertribal court to resolve this portion of the dispute. No, we didn't. Because if they said that they weren't going to follow that court, it's difficult to say we want to go back to the court where we won and you didn't like it. This is very weird. They did, by your account, and I wasn't fully aware of this, they didn't say they wouldn't follow it. They said they would follow it. Well, they followed the result. Right. And they said they found a time. Which was against their interest, the result, right? Yes. Okay. They agreed with the result, but not the reasoning, and they made a unilateral independent decision. And that's how they decided it. Okay. You have about a minute, which you can either reserve or use. Or sit down. I'll reserve it. Thank you. Thank you very much. Okay. To address first the Foreign Sovereign Immunities Act question, I think it's been clear for 175 years since Chief Justice Marshall's decision in the Cherokee Nation case that Indian tribes are domestic sovereigns, not foreign sovereigns. In fact, this court, in Justice Berzon's opinion just two years ago in Crystal Energy, found that Indian nations are domestic sovereigns for purposes of the Bankruptcy Code. I don't think the Supreme Court in the Kiowa case recognized that there was a discrepancy. Actually, we read that last night. I think what we actually decided was that they were either domestic or foreign, but they weren't nothing. And so they were therefore under the Bankruptcy Code. But I do agree that historically that's been true. Right. If you look, even the Kiowa decision, which is the Supreme Court, where the Foreign Sovereign Immunities Act was raised but not decided, the dissent in that case recognized that the distinction that they were finding between the Indian tribe and the result under the Foreign Sovereign Immunities Act was discrepant, but that it wasn't their decision or their job to render them consistent, that it was up to Congress to change the law. And that's our position, that the Foreign Sovereign Immunities Act simply has no applicability to this case. The fact that commercial activities of a foreign sovereign are not immune does not change the result in Kiowa and CNL, which specifically held that Indian commercial activities, absent a waiver, are immune. So we think the Foreign Sovereign Immunities Act simply does not apply to this case. As to the domestic waiver, there is, as the Court noted, nothing in the handbook which says the tribe waives its immunity in any jurisdiction. Well, it does suggest there can be litigation someplace. That it does. And as we need. There's a someplace. Intertribal court, perhaps, if they had asked for it. Is your opponent's account of your client's attitude towards the intertribal court accurate? I'm not sure, Your Honor, because I was not involved in that and it never really got into the record below. That was simply one of the allegations that was made. I would note, though, that even if there was not another court, this court has already decided in the Diamantini case that the absence of a remedy in a federal court does not, in any court, does not give rise to a waiver of sovereign immunity. Well, but that's not the question. The question is whether this particular language would be nonsensical if it wasn't contemplating some litigation someplace. And if the error, if it's true that your client's position in the earlier case was ultimately to say that the intertribal court lacked jurisdiction, then who had jurisdiction? Then where was this litigation that they were supposed to exhaust their appeals prior to? Well, it says it just, you know, the handbook also says that the tribe has the exclusive authority to determine employment issues and does not give that right to anybody else. So you have somewhat of a discrepancy. You have a reference to litigation, but you also have an explicit statement in the handbook that the tribe reserves to itself the exclusive right to determine employment issues. My question is, does Section 5 of the Fourteenth Amendment apply to the Indian tribes such that, say, a Title VII case could go forward because there would be a abrogation? I believe, and I haven't addressed it, that there is considerable amount of authority that a number of statutes, including, I believe, Title VII, do not apply to Indian sovereign immunity by Congress. I know there are, in terms of housing cases, I know especially in the Eighth Circuit there are a number of cases which say that the, you know, housing discrimination sections do not apply because there has not been a congressional waiver. But if there were a congressional waiver, I mean, my understanding is that the Indian sovereign immunity is just waivable by Congress. And I don't even think it needs a Section 5. I think it's just waivable. Correct. Congress can waive it for any reason whenever it wants to. That's for some purposes it has. For some purposes it has. So, therefore, this section that says they have to exhaust appeals prior to litigation has some meaning because there are some things that there is a congressional abrogation of. That would be correct. We don't know what they are, though. Offhand, I don't know. Okay. Anything else? Unless the Court has any further questions, I have nothing further. Thank you, Your Honor. Thank you very much, counsel. Thank you for your interesting arguments. Oh, you have a minute. I'm sorry. Go ahead. Just briefly, I wanted to point out again that the Montaigne case was a contract which had an arbitration clause but also had a provision that specifically says the Indian tribe is not waiving sovereign immunity. What about my question, though, about aren't there some causes of action that lie because Congress has said they do? Yes. But they would not be employment causes of action using the handbook. They would be based on the Indians. That doesn't matter with respect to this provision.  Well, I think that if it's not, if it's beyond the scope of the handbook, then that waiver, or what we call a waiver, would not even apply, would not be a concern. So it only deals with the employment relationship when you read that whole paragraph  that it sets in, we're talking about the employment relationship, not any other relationship. What's your response to opposing counsel's observation that there is also a provision in the handbook that gives the tribe exclusive decision-making authority regarding employment? Every employer has that initial right to make all the decisions, and every employee handbook that you ever will see in this Court will have something to say that they're at will, that the employer doesn't have to follow the book, that they can do step discipline or not do step discipline. They always have that type of language, and that language does not mean that you throw away and don't read anything else in the book. If they didn't mean what they said in that sentence, why did they put it in there? Just very briefly, I'm not understanding your earlier response to me. This paragraph about arbitration and exhaustion and litigation does not appear to apply only to contractual disputes. It says, any disputes which might arise out of employment with the company or EMC. So it doesn't rely on it. Yes. I misunderstood your question because I was thinking this waiver would only apply to employment relationship matters. Okay. But aren't some employment relationship matters litigable in court because Congress has said they are? Title VII. Yes. I don't know the answer to that, and I'd also have to look at whether something like the Indian Civil Rights Act would pick up some of this and answer the question in a different way. Okay. I just don't know. I'm not sure either, but I suspect that there are some statutes of that kind. Okay. Thank you very much. That's very useful. The Navarro v. Eagle Mountain Casino case is submitted, and we will go on. Okay.
judges: Berzon, Rawlinson, Callahan